

**NUMBER 13-08-00013-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **TERRY GOODMAN,** | **Appellant,** |

**v.**

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellee.** |

**On appeal from the Criminal District Court
of Jefferson County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Garza**

Appellant, Terry Goodman, was convicted by a Jefferson County jury of possession of more than one gram but less than four grams of cocaine, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c) (Vernon 2003). The offense was enhanced to a second-degree felony after Goodman pleaded "true" to enhancement paragraphs in the indictment alleging that he was a repeat felony offender. *See* TEX. PENAL CODE ANN. § 12.42(a)(3) (Vernon Supp. 2008). Goodman was then sentenced by the trial court to ten years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. He now appeals, contending that he was afforded

ineffective assistance of counsel at trial. We affirm.

## I. BACKGROUND

At around 9:30 p.m. on August 6, 2006, police officers Matthew Laird and Emilio Romero were patrolling the area around the Castle Motel in Beaumont, Texas in their marked Beaumont Police Department vehicle. The officers noticed Goodman standing next to a parked car in the parking lot of the motel. Officer Laird drove the vehicle to where Goodman was standing. Officer Romero testified that "the car wasn't running. First thought was auto burglary. That's why we stopped to investigate." As the police vehicle approached, Goodman began to walk toward a motel room. Officer Romero exited the vehicle and stated to Goodman, "Hey, police, stop." Goodman did not stop, but proceeded toward the motel room. Officer Romero continued to pursue Goodman on foot.

After Officer Romero began his pursuit of Goodman, but before Goodman reached the motel room, Officer Romero noticed that Goodman had a white tissue in his right hand. Officer Romero testified what happened next as Goodman approached the motel room:

Q (State's attorney) What is the next thing you remember happening?

A (Officer Romero) He's pushing this door open and he throws the white tissue to the ground inside of this room.

. . . .

Q Okay. And, so, how far behind you—How far in front of him—Mr. Goodman are you or where are you and Mr. Goodman as far as that door is concerned when you see him [throw the tissue to the ground]?

A By the time he makes this corner, I close on him. (Indicating) He opens the door and breaks the threshold of the door and that's where I make contact with him from behind.

Q How far into the door [sic] do you think he is when you grab him?

A About a foot.

2

Q             About a foot. All right. And, that's when basically—How many steps do you think that you took before you had to get him after he threw the object?

A             I barely broke the threshold of that bedroom.

Q             So, matter of seconds?

A             Right.

The discarded tissue contained four bags of what was later confirmed as 1.7 grams of powder cocaine.

Goodman was tried on November 7, 2007 and was convicted of possession of more than one gram but less than four grams of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c). This appeal followed.

## II. DISCUSSION

By his sole issue, Goodman contends that his trial counsel provided ineffective assistance because he failed to challenge the admissibility of the drug evidence, either by filing a motion to suppress or by objecting to the evidence at trial. Goodman further contends that, had a motion to suppress been filed or an objection made, there is a reasonable likelihood that the evidence would have been deemed inadmissible and he would not have been convicted.

## A. Standard of Review

To establish ineffective assistance of counsel, Goodman must show (1) his attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 684 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.). Whether this test has been met is to be judged on appeal by the totality of representation, not by any isolated acts or

3

omissions. *Jaynes*, 216 S.W.3d at 851. The burden rests on the appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)). Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if the appellant overcomes the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851. Moreover, the acts or omissions that form the basis of appellant's claim of ineffective assistance must be supported by the record. *Thompson*, 9 S.W.3d at 814; *Jaynes*, 216 S.W.3d at 851. A silent record which provides no explanation for counsel's actions usually will not overcome the strong presumption of reasonable assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 813-14.

When an appellant contends that his trial counsel erred by failing to file a motion to suppress evidence, the appellant must show that the motion would have been granted in order to satisfy *Strickland*. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).

**B.    Analysis**

Goodman contends that the police officers had no reasonable suspicion to detain him and therefore that the drug evidence was inadmissible as the fruit of an unlawful seizure. *See* U.S. CONST. amend. IV (prohibiting unreasonable searches and seizures); TEX. CONST. art. I, § 9 (same); TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005) (stating that evidence obtained in violation of any constitutional provision is inadmissible).

Police officers may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Gurrola v. State*, 877 S.W.2d 300, 302 (Tex. Crim. App.

4

1994).  To justify a brief investigative detention, the officer must be aware of specific, articulable facts which, in light of his experience and personal knowledge, together with reasonable inferences therefrom, would warrant detaining the suspect.  *Gurrola*, 877 S.W.2d at 302.

Goodman asserts that "[a] person standing next to a parked car, under a carport, with the engine off, at a motel, is not enough to indicate that person may be, has been, or is about to be involved in a crime."  Moreover, Goodman notes correctly that, when there is no probable cause to effect an arrest, a person has a constitutional right "to walk away and not answer any questions put to him without such action creating reasonable suspicion in the mind of the officer that criminal activity [is] afoot."  *Id.*

The State disagrees that the officers lacked probable cause, and it further argues that Goodman abandoned the drug evidence prior to being detained.  *See Clapp v. State*, 639 S.W.2d 949, 953 (Tex. Crim. App. 1982) ("[W]hen police take possession of abandoned property, there is not a seizure under the Fourth Amendment.").  Without determining whether the officers had probable cause to detain Goodman, we agree with the State that the drug evidence was abandoned by Goodman prior to his being seized and so the evidence was admissible.

Our analysis turns on the precise definition of "seizure" as provided by case law. Goodman relies primarily on *Hawkins v. State*, 758 S.W.2d 255, 259 (Tex. Crim. App. 1988), in contending that a seizure occurred before the time he abandoned the cocaine. In *Hawkins*, police began a pursuit of the appellant without probable cause.  *Id.*  As appellant was being chased, he dropped a paper bag containing cocaine and heroin.  *Id.* at 257.  Police recovered the bag, which was later used as evidence to convict appellant. *Id.*  Finding that appellant's motion to suppress the evidence should have been granted,

5

the *Hawkins* Court noted that "abandonment, like consent, must be freely given to be effective." *Id.* at 258 (citing *United States v. Morin*, 665 F.2d 765, 770 (5th Cir. 1982)). The Court reasoned that the "appellant's decision to abandon the evidence was a direct result of the [police] misconduct, since the police had no specific and articulable facts on which to base a valid investigative stop." *Id.* at 260. The Court further held that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 259 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Because the appellant was "seized" at the time the contraband was recovered, the evidence was inadmissible as the fruit of an unlawful seizure. *Id.* at 260.

The *Hawkins* Court cited *Comer v. State*, 754 S.W.2d 656, 659 (Tex. Crim. App. 1988) (op. on reh'g), which involved a very similar fact situation—a suspect discarded contraband as police were pursuing him without probable cause. Even though Comer "abandoned" the contraband, such "abandonment" was the "direct result of the police misconduct" and so the evidence was improperly admitted. *Id.* The Court in *Comer* found "no meaningful constitutional distinction between the situation where, because of police unlawfulness, the police search an individual and find contraband and the situation where, because of police unlawfulness, the individual throws or drops an object to the ground and the police seize it." *Id.* The Court noted that "[i]n both instances the evidence is subject to being suppressed because it was the direct result of initial police misconduct" and that "such unlawfully obtained evidence should always be suppressed and should never be used to convict the accused." *Id.*

However, three years after *Comer* and *Hawkins*, the United States Supreme Court decided *California v. Hodari D.*, 499 U.S. 621 (1991). In *Hodari D.*, as in *Hawkins*, *Comer*,

6

and the instant case, the appellant discarded contraband as he was being pursued by police. In an opinion announced by Justice Scalia, a majority of the Court affirmed the rule that a person is seized "only if" a reasonable person would not believe he or she was free to leave. *Id.* at 627-28. However, the majority explained that this is "a *necessary*, but not a *sufficient*, condition for seizure." *Id.* at 628 (emphasis in original). Rather, in order for a police action to constitute a seizure, one of two additional conditions must be met: (1) the suspect must be subjected to a "show of authority" and he or she must yield thereto; or (2) physical force must be used to limit the suspect's movement. *Id.* at 627. In *Hodari D.*, the Court upheld the legality of the seizure of the contraband because it was abandoned before the defendant submitted to authority, and before he was subjected to physical force. *Id.* at 629.

In *Johnson v. State*, the Texas Court of Criminal Appeals expressly adopted the holding in *Hodari D.* and determined that the Texas Constitution does not extend beyond the federal seizure standard. 912 S.W.2d 227, 235-36 (Tex. Crim. App. 1995) ("A show of authority, without an application of physical force, to which a suspect does not yield is not a seizure under the Fourth Amendment."); *see Crawford v. State*, 932 S.W.2d 672, 674 (Tex. App.–Houston [14th Dist.] 1996, pet. ref'd) ("A verbal order to stop unaccompanied by submission or actual force does not constitute a seizure."); *Sheppard v. State*, 895 S.W.2d 823, 824 (Tex. App.–Corpus Christi 1995, pet. ref'd).

Here, even assuming that the police lacked probable cause to arrest Goodman—which is a point not conceded by the State—the drug evidence was nevertheless admissible because Goodman neither submitted to Officer Romero's show of authority nor was he subjected to physical force at the time he abandoned it. *See Hodari D.*, 499 U.S. at 629; *Johnson*, 912 S.W.2d at 235-36. The somewhat peculiar result

7

of this rule is that, had Goodman held onto the contraband until after he was apprehended, the evidence would have been the fruit of an unlawful seizure and would have been inadmissible if Officer Romero lacked probable cause. However, because Goodman discarded the contraband prior to being "seized" as defined by the courts, the evidence is admissible. This remains the case even though, assuming no probable cause existed for the seizure, Goodman's relinquishment of the contraband was indisputably the "direct result of police misconduct." *See Comer*, 754 S.W.2d at 659. We are cognizant that this rule may encourage police officers to initiate pursuits of suspects without probable cause, with the expectation that the suspect will not be aware of the rule and may discard contraband prior to the eventual illegal detention. *See Hodari D.*, 499 U.S. at 630 (Stevens, J., dissenting) ("In its decision, the Court assumes, without acknowledging, that a police officer may now fire his weapon at an innocent citizen and not implicate the Fourth Amendment—as long as he misses his target."). Nevertheless, we are not at liberty to ignore binding precedent, and neither is the trial court.

We therefore conclude that there was no reasonable probability that, had Goodman's trial counsel filed a motion to suppress or objected to the drug evidence at trial, the evidence would have been excluded. *See Strickland*, 466 U.S. at 684. Accordingly, Goodman's issue is overruled.

## III. CONCLUSION

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 11th day of June, 2009.

8